EDWARD P. FORNIQUET, Admr., &c., v. CHARLES E. FORSTALL et al.

1. CHANCERY: PLEADING: MULTIFARIOUSNESS.—Where the complainant claims under one title, and brings suit against various defendants, who claim the same estate under distinct and separate sales, of different parcels thereof, to them separately, and where the gravamen of fraud or wrong in the sales is the same, and equally applies to all, the bill will not be liable to the objection of multifariousness. See *Butler* v. *Spann*, 27 Miss. R. 238 ; *Nevitt* v. *Gillespie*, 1 How. Miss. R. 110 ; *Gaines* v. *Chew*, 2 How. U. S. R. 619.

2. SAME.—An administrator *de bonis non* may proceed in the same bill against his predecessor and several purchasers from him, of distinct parcels of the realty of his intestate, to annul such sales, upon the ground that they were made by the fraudulent collusion of the administrator and the purchaser, for his benefit.

3. EXECUTOR AND ADMINISTRATOR: ADMINISTRATOR DE BONIS NON, HIS RIGHT TO INTERFERE WITH PROPERTY DISPOSED OF BY THE ORIGINAL ADMINISTRATOR.— Where the property of the intestate has been legally disposed of by the administrator in chief, in a proper course of administration, the administrator *de bonis non* has no right to interfere with it ; but if such disposition were illegal or fraudulent, and therefore not a valid act of administration, the property remains subject to the control of the administrator *de bonis non*, and is assets in his hands as though it had never been sold. See *Prosser* v. *Leatherman*, 4 How. Miss. 240 ; *Miller* v. *Helm*, 2 S. & M. 695 ; *Scott* v. *Searles*, 7 Ib. 505 ; *Searles* v. *Scott*, 14 Ib. 95.

4. SAME.—An administrator *de bonis non* (as well as the administrator in chief) is a trustee for the creditors, of all the assets of his intestate which are subject to the payment of debts, and it is his right and duty to secure all such assets and appropriate them to the benefit of the creditors ; and hence he may sue for and recover property illegally or fraudulently disposed of by the original administrator.

5. SAME: REALTY ASSETS WHEN ESTATE INSOLVENT.—Upon a declaration of insolvency, the real estate of the decedent, in like manner as the personalty, becomes assets in the hands of the administrator for the payment of debts ; and he may, therefore, maintain a bill in equity to annul a fraudulent and illegal sale of the realty by a former administrator, so as to enable him to apply it to the benefit of creditors.

6. SAME: ADMINISTRATOR DE BONIS NON REPRESENTS DECEDENT, AND NOT FORMER ADMINISTRATOR.—An administrator *de bonis non* is the representative of the decedent and not of the original administrator, and he is only bound by the administrative acts of the latter so far as they are legal and valid ; and hence he is not bound by a fraudulent disposition of assets made by the original administrator.

7. VENDOR AND VENDEE: MALA FIDE PURCHASER NOT ENTITLED TO HAVE PUR-

CHASE-MONEY REFUNDED.—A *mala fide* purchaser of the property of a decedent from the original administrator, is not entitled to have the amount of purchase-money paid by him, refunded upon the nullification of the sale, at the instance of the administrator *de bonis non*.

8. CHANCERY: JURISDICTION TO ANNUL FRAUDULENT SALE OF ADMINISTRATOR.— A court of equity has jurisdiction to entertain a bill by an administrator *de bonis non* of an insolvent estate, to annul a previous fraudulent and illegal sale of the realty of the decedent, made by the original administrator, so as to remove all impediments to a fair sale of the same by the complainant to the best advantage for the payment of debts.

9. SAME: JURISDICTION: WHEN FRAUDULENT SALE OF ADMINISTRATOR ANNULLED: DECREE FOR POSSESSION AND RENT.—A court of equity, having taken jurisdiction of a bill by an administrator *de bonis non*, to annul a fraudulent sale of the realty of the decedent, made by a former administrator, will, in aid of the jurisdiction of the Court of Probates, grant all the relief the justice of the case requires, and which is necessary to a complete administration of the property, and which the Court of Probates is incompetent to grant; and it will, therefore, upon a nullification of the sale, decree possession of the property to the complainant, and an account for the rents and profits.

APPEAL from the Chancery Court of Harrison county.    Hon. William M. Hancock, chancellor.

*John Henderson*, for appellant.

The grounds taken by the demurrer may be reduced to three heads:—

1st. Multifariousness.

2d. Jurisdiction.

3d. Relief.

1st point: Multifariousness.    Is the bill multifarious?    As a negative response to this question, we quote from the decisions of this honorable court:—

" Courts of equity have frequently interposed when legal questions alone were involved, if the remedy at law was not clear, certain, or adequate.    Courts of equity will also interpose to prevent multiplicity of suits, where the subject-matter of contest is held by one individual in opposition to a number of persons, who controvert his right, and who hold separate and distinct interests, depending upon a common source.    Not that it is for the purpose of adjudicating upon the legal rights of the parties litigant, but to direct their ascertainment, under the superintendence of the court,

upon issues framed by it. The right of a court of chancery thus to interpose is regarded as amongst the most salutary features of its jurisdiction. The plaintiff, by its interposition, is released from the necessity of bringing a number of suits at law against different individuals, to quiet the same common right, where each suit would establish only the particular right in question between plaintiff and defendant in that suit." 1 How. Miss. R. 110, *Nevitt et al.* v. *Gillespie* (Smith, J.)

" It is urged the bill is multifarious, in uniting in it several defendants who have acquired possession of the various slaves at different times, and without any connection, who, if liable, should be accountable for different hires. It is impossible to lay down any universal rule as to what constitutes multifariousness. Story, Equity Pl. p. 530. And the application of this rule is held to depend upon the particular circumstances of the case presented. But it is held, not to apply when the parties have one common interest touching the matter of the bill, although they claim under distinct titles, and have independent interests. Story, Equity Pl. p. 285. So, when the several matters are of the same nature as to the defendants, and in the same general right in the complainant. Mitf. Equity Pl. pp. 181, 182. These principles appear fully to justify the joinder of the defendants here, and, in the recent case of *Gaines* v. *Chew*, 2 How. U. S. R. 619, the Supreme Court of the United States sanctions the rule, that when plaintiffs claim under one title, and bring their suit against various defendants who claim the same estate, under distinct and separate sales of different parcels thereof, to them separately, when the gravamen of fraud or wrong in the sales is the same, and equally applies to all, the objection of multifariousness will not apply. The same rule has been held in this court in *Delafield* v. *Anderson*, 7 S. & M. 650. The object of the rule against multifariousness is to protect the defendant from unnecessary expense. 3 Mylne & Craig, 85."

" But it is manifest that, under the circumstances of this case, it is a great saving of expense to join all the defendants in one suit; and the prevention of multiplicity of suits is a favored object in courts of equity. And, in the case of *Gaines* v. *Chew*, the court say, when parties should not be subjected to expense and inconvenience in litigating matters in which they have no interest, mul-

tiplicity of suits should be avoided by uniting in one bill all who have an interest in the principal matter in controversy, though the interests may have arisen under distinct contracts." *Butler et al.* v. *Spann et al.* (Handy, J.), 5 Miss. R. 237.

"Multiplicity of suits is an evil quite as much to be avoided as multifariousness in a single suit. To escape one evil we may imperceptibly run into the other." *Naylans et al.* v. *Burge et al.*, 14 S. & M. 205.

The case at bar comes precisely within the rule of these decisions. The court, therefore, erred in sustaining appellees' demurrers to complainant's bill on account of multifariousness.

2d point: Jurisdiction. Has the Court of Chancery jurisdiction of the matters set up in complainant's bill? We answer in the affirmative, and propose to show this from decisions of this honorable court, under its interpretation of the respective jurisdictions of courts of probate and courts of chancery, under the Constitution and laws of this State.

Art. 4, sec. 18 of Constitution of Mississippi confers jurisdiction of courts of probate in the following words:—

"A court of probate shall be established in each county of this State, with jurisdiction in all matters testamentary, and of administration of orphans' business, and the allotment of dower in cases of idiocy and lunacy, and of persons *non compos mentis.*"

Art. 4, sec. 16, of same Constitution, says:—

"A separate court of chancery shall be established, with full jurisdiction in all matters of equity."

These constitutional provisions have been carefully and ably expounded by this court, in the following cases: 2 How. Miss. R. 860, 861, *Blanton* v. *King et al.* (Pray, J.); 1 Ib. 562, *Cable* v. *Martin & Bell* (Sharkey, Ch. J.); 4 Miss. R. 599, *Phelps* v. *McLaughlin* (Handy, J.); 12 S. & M. 217, *Grant* v. *Lloyd et al.* (Sharkey, Ch. J.); 1 S. & M. 236, *Murphy* v. *Clark* (Clayton, J.); 10 S. & M. 424, 425, *Williams* v. *Strattan* (Sharkey, Ch. J.); 3 Miss. R. 533 (Yerger, J.); 5 Miss. 629, *Fonte* v. *McDonald* (Handy, J.).

We admit, *on all matters of administration*, the Probate Court has exclusive original jurisdiction under the Constitution and laws of Mississippi. Appellant, as administrator *de bonis non*, under

the full conviction that the Probate Court of Harrison county has exclusive original jurisdiction of the insolvent estate of Michel Nicaud, resorted to that tribunal to administer said Nicaud's estate.

As soon as appellant reported that the estate of Nicaud was insolvent, he obtained an order of the Probate Court, to have the real estate sold, upon giving due notice to all concerned, and advertised the same for sale on several occasions, and attempted to sell, but could effect no sale, save for a nominal price. The reason he could effect no sale was, the appellees held adversely to his title as administrator *de bonis non*, and no one would buy for a fair price, under these circumstances.

The bill charges that the claim and possession of appellees are an incumbrance upon his title, and an insuperable barrier to his effecting a sale for anything like a reasonable price. To remove this obstacle is the main object of his bill. Here we are met with the objection that the Chancery Court has no jurisdiction to remove this incumbrance, but that it must be done by the Probate Court. The estate having been declared totally insolvent upon proceedings had in the Probate Court, the question of insolvency cannot be questioned collaterally in this suit by the appellees. 6 How. Miss. R. 360; 2 S. &. M. 304, 337; 1 S. & M. Ch. R. 609.

Appellant, as administrator *de bonis non* (and not the heirs), is the *legal* owner of an estate declared insolvent and ordered to be sold. On this point, we quote from the decision of this court in 10 S. & M. 424, 425, *Williams* v. *Strattan* (Sharkey, Ch. J.), as follows:—

" The appellee, Strattan, as the administrator on the estate of Shubal Foote, which had been reported insolvent, and an order being made that the real estate should be sold, filed this bill to perfect the legal title to a lot in the town of Grenada, to which Foote, in his lifetime, had acquired an equitable title. Whether an administrator can, under such circumstances, claim to have the legal title to real estate perfected, is a preliminary question. Under different circumstances, he could not, of course. But, on deficiency of personal property, the Probate Court may decree a sale of real estate, which, by law, stands charged with debts, in case the personal estate be insufficient. The sale is to be made by administrator. Through him the proceeds of sale, as assets, are to be

administered. By the decree of sale, the title of heir is divested, and the administrator is so far invested with the legal ownership, as to enable him to remove incumbrances, so that the decree of sale may be carried out for the best interest of the estate and of the creditors. This being the case, it becomes necessary to inquire whether complainant, in his bill, has made out a proper case for the aid of a court of chancery."

Again, the bare fact of an outstanding title gives a right to go into equity to have it put out of the way, and the muniment by which it is evidenced cancelled, upon a proper showing, and the clouds or obstruction removed. It was proper, therefore, for the administration to have the doubt, created even by a pretended or void sale, removed, so that no embarrassment might exist in the discharge of his duties. `1 S. & M. 236, *Murphy* v. *Clark* (Clayton, J.); 1 Freeman, Ch. R. 517, 518.

We conclude that the court erred, also, in sustaining the demurrers to the bill, for want of jurisdiction.

3d point: Relief. Can the court grant appellant the relief specially prayed for, or any relief whatsoever, under the general prayer, consistent with the averments of the bill?

The bill charges the sale made by Forstall, former administrator, is *void*. This is admitted by the demurrers. This court has repeatedly declared, that a void title of an administrator does not divest the estate of the deceased. 2 Miss. R. 82; *Prestige et al.* v. *Pendleton;* 14 S. & M. 194, *Ragland* v. *Green et al.*, and cases cited; 6 S. & M. 325, *Byrd* v. *Holloway*.

A purchaser under a purchaser at a void administrator's sale is not protected. 14 S. & M. 194, cases cited; 7 S. & M. 749.

Appellant, as administrator *de bonis non*, is bound to administer the insolvent estate, primarily, for the benefit of creditors, and contingently for heirs and distributees. 1 S. & M. 236, *Murphy* v. *Clark;* 3 Miss. R. 134, *Thornton* v. *Glover et al.;* 13 S. & M. 313; 11 S. & M. 443.

Appellant, as administrator *de bonis non* of the declared insolvent estate, has a right to sue for its recovery. 1 S. & M. 237; 2 Miss. 82; 13 S. & M. 97; 10 S. & M. 424; 13 S. & M. 294; 7 S. & M. 455.

Appellant, as administrator *de bonis non*, has a legal right to

recovery of the real estate in possession of appellees, and for account of rents and profits. 10 S. & M. 424, 425; 12 Ib. 217; 1 How. Miss. R. 85, 563; 4 Miss. 599; 6 Ib. R. 306; 5 S. & M. 14; 13 S. & M. 294; 7 Ib. 749.

If appellant is not entitled to the special relief sought, he may have any, consistent with the case made by the bill, under the general prayer for relief. 14 S. & M. 204; 6 Miss. 306; 2 Ib. 83; 1 S. & M. 237; 14 Ib. 99; 12 Ib. 217; 7 Ib. 506.

Appellant asks the Chancery Court for re-sale of the property. This prayer cannot be granted, as appellant has already obtained a valid order from the Probate Court, under which the property may ultimately be sold, after the court shall have cancelled appellees' pretended title, given possession of the real estate to appellant for the purpose of administration, and compelled appellees to account for rents, &c.

The rents are an incident to the legal title, and belong to appellant, as administrator *de bonis non*, of an estate declared insolvent, and ordered to be sold. 10 S. & M. 424; 13 Ib. 293, *Bullock* v. *Sneed*.

We conclude, therefore, that the court erred, likewise, in sustaining the demurrers to the bill as to the relief sought.

Upon the whole, we think the demurrers should be overruled, and the cause remanded for further proceedings, according to the decree of this court.

*Champlin* and *Adams*, for appellees, made the following points:—

1. The bill is multifarious. *Whaley* v. *Davoson*, 2 Sch. & Lefr. 367; Story Eq. Pl. §§ 273, 274, 275.

2. The administrator *de bonis non* has no right to maintain a bill to annul a sale made by the administrator in chief. 26 Miss. R. 543; 5 S. & M. 130; 6 Ib. 323; 1 How. Miss. R. 68; Ib. 87, 154; *Grant* v. *Chamberlin*, 4 Mass. R. 411; *Underhill* v. *Devereaux*, 2 Saunders R. 72; *Turner* v. *Davis*, Ib. 148; Toler on Exors. 448; 2 Tidd, 1030; 10 Conn. R. 68; 1 Sergeant & Rawle, 549; 6 Cushm. 187; 14 S. & M. 94.

3. A court of chancery has no jurisdiction over the subject-matter of the suit. *Blanton* v. *King*, 2 How. Miss. R. 856; *Carmichael* v. *Browder*, 3 Ib. 252; 4 S. & M. 707.

HANDY, J., delivered the opinion of the court.

The appellant filed this bill in the Chancery Court of Harrison county, as administrator *de bonis non* of Michel Nicaud, against Forstall, the former administrator of that estate, and others of the appellees, for the purpose of setting aside and annulling a sale of certain real estate of the intestate sold by Forstall, as administrator, under a decree of the proper Court of Probates, and afterwards purchased by certain of the appellees.

The statements and charges of the bill are, in substance, that Nicaud died in the year 1840, seised and possessed of certain real estate and town lots in the town of Pass Christian, in this State, but leaving no personal property in this State, and owing divers debts. That Forstall, of the State of Louisiana, obtained letters of administration upon his estate in this State, and at the same time represented to the Probate Court that there were debts to a considerable amount against the estate, and no personal estate whatever to pay the same, and prayed for and obtained an order to sell the town lots belonging to the estate for that purpose, upon giving due notice to all persons interested. That Forstall, on the day of the sale, had the lots bid off in the name of his brother-in-law, Herman, nominally, but in truth for himself; and the bill charges that the sale was null and void, and fraudulent. That it was void, because the notice prescribed by law was not given to the heirs of Nicaud and all other persons interested; and because Forstall did not comply with the order of sale, which directed him to sell the three town lots singly, but that he sold them in block; and that it was fraudulent, because he acted in the double capacity of administrator and attorney in fact, for certain creditors of the estate, and because, although the bidders at the sale desired and requested that the lots should be sold separately, as they would bring more if sold in that way than if sold in block, and there were persons present desirous of bidding for the lots if sold separately, yet that he persisted in selling the lots in block against the protest of both bidders and creditors of the estate. And that he gave notice to persons present, who intended to bid for the property, that it would be useless for them to bid, for that he intended to buy all the lots, and that if any one wished to purchase separate lots, they could do so afterwards by applying to him. That Forstall well knew that the sale was fraudulent and to the injury of the creditors, and that,

in furtherance of his fraud, he connived with Herman to dispose of his claim by selling the three lots to three several parties, who are made defendants, who, it is charged, well knew of the nullity of the sale and of the fraud perpetrated by Forstall before and at the time of the sale; and in support of this allegation, the bill charges that these parties, at the time they purchased, not only required a deed from Forstall as administrator, but bonds, with personal security, to indemnify them against the claims of creditors or others interested in the estate. That these purchasers conspired with Forstall and Herman to defraud the creditors of the estate, and have held the property since the date of their purchases in bad faith.

The bill further states that Forstall has been duly removed from his office as administrator by the Probate Court, and that the appellant was duly appointed and qualified as administrator *de bonis non*, and has reported the estate insolvent; that there is no other property of the estate except the lots of land above mentioned, and that the appellant is trustee by law of the estate for the benefit of creditors, and, under the orders of the Probate Court, that he has repeatedly attempted to make sale of the property for the payment of the debts, but has been unable to make the sale, owing to the possession and fraudulent claim of the defendants, the present occupants, who hold in bad faith; and that so long as they remain in possession and claim title, no sale can be made but for a nominal sum, not one-tenth of the actual value. The heirs of Nicaud are also made defendants to the bill.

The prayer is, that the sale made by Forstall be declared illegal, fraudulent, and void, and that the possession of the lots be decreed to the appellant, and that the parties who have had possession be decreed to account to the appellant for the rents and profits, and that the property may be sold for the payment of the debts of the deceased, according to the rules to be prescribed by the Court of Chancery, and for general relief.

The parties in possession of the lots answered so much of the bill as charged fraud, denying the allegations, and demurred to the residue, assigning numerous grounds of demurrer, which set up the following objections to the bill:—

1st. That it is multifarious.

2d. That it is an attempt, by an administrator *de bonis non*, to set aside a sale made by the original administrator.

3d. That a court of equity has not jurisdiction of the subject-matter of the suit.

This demurrer was sustained, and the bill dismissed, from which decree this appeal was taken.

Our attention, in considering the case, will be confined to such grounds of demurrer as are relied on by the counsel for the appellees to sustain the decree.

1. The objection, on the ground of multifariousness, has frequently been the subject of consideration in this court in cases very analogous to this; and the rule which has been sanctioned is, that where the complainant claims under one title, and brings suit against various defendants, who claim the same estate under distinct and separate sales of different parcels thereof, to them separately, when the gravamen of fraud or wrong in the sales is the same, and equally applies to all, the objection will not apply. *Butler et al.* v. *Spann*, 27 Miss. 238; *Nevitt* v. *Gillespie*, 1 How. Miss. R. 110. The facts of this case, as stated in the bill, show that the parties in possession of the property claim under one common right, and occupy the same position with regard to the claim of the appellant. It is, therefore, a fit and proper case for uniting all the parties in one suit, thereby preventing multiplicity of suits, and comes fully within the rule above stated. This objection was, therefore, untenable.

2. The second ground of demurrer is, that the sale of the property by the first administrator placed it beyond the power of the administrator *de bonis non;* that it must be considered as an administration of the property; and, as the administrator *de bonis non* had no control over property administered by his predecessor, that he had no interest in the property, nor right to call in question the disposition of it, made by the original administrator.

This position is based on the assumption that the disposition by the original administrator was legal and valid, and in a proper course of administration. In such a case, the administrator *de bonis non* would clearly have no right to interfere with the property. But, it is equally clear, that if the disposition was not a valid act of administration, and especially if it was made fraudulently, and

for the individual benefit of the administrator, and in violation of the requisites of law to a valid disposition, the property remains subject to the control of the administrator *de bonis non*, for the purposes of administration, as though it had never been sold by the administrator. *Prosser* v. *Leatherman*, 4 How. Miss. 240; *Miller* v. *Helm*, 2 S. & M. 695; *Scott* v. *Searles*, 7 Ib. 505; *Searles* v. *Scott*, 14 Ib. 95. And, according to the allegations of the bill, which must be taken as true, as the case is now presented, the sale was made in violation of the directions of the decree, authorizing it for his own private benefit, in opposition to the rights and interest of the creditors, and fraudulently, to their injury, by preventing a fair sale for full value; and that the defendants, in possession as purchasers, had notice of, and participated in, the fraud. Under these circumstances, it cannot, with any propriety, be said that the sale was valid, and that the property was so disposed of, that it could not be subjected to the payment of the debts of the deceased in the due course of administration, by the administrator *de bonis non*.

But it is said that the appellant does not show himself to be entitled to have the sale annulled, because he is neither an heir nor a creditor; and that the right to set aside an irregular and fraudulent sale of land made by an administrator belongs only to creditors and heirs. This position is manifestly unsound under our laws.

An administrator *de bonis non*, as well as the original administrator, is a trustee, for the benefit of creditors, of all the assets of the estate which are subject in law to the payment of the debts of the deceased, and it is his duty to secure all the assets, and to appropriate them to the use of the creditors. From the nature of his office, as soon as he takes upon him the trust, and becomes qualified to act, he is clothed with the power to bring suits, or to take such other legal steps, as may be necessary to give to the parties interested in the estate, the full benefit of the property committed to his administration.

This rule is readily admitted with regard to the personalty, and there can be no doubt but that an administrator *de bonis non*, would have the right to sue for, and secure for the purpose of administration, any personalty which the original administrator had illegally and fraudulently sold for his own benefit, at least to a

party implicated in the fraud, or chargeable with notice of it. Under our laws, the realty of a deceased person, upon a declaration of insolvency of the personalty, becomes subject to the payment of debts, and as assets in the hands of the administrator, to be administered as a part of the regular duty of administration, as completely as was the personalty (*Lee* v. *Gardner*, 26 Miss. 522); and hence he is entitled and authorized to take such legal steps as may be necessary to secure the real estate, under such circumstances, for the benefit of creditors, upon the same principle that he would have power to take such steps in relation to the personal estate. As a trustee for creditors alike in both cases, it is his duty to secure and appropriate the assets, whether consisting of real or personal estate, to their use, so as to give them the full and fair benefit thereof; and as well in the one case as in the other, whenever the circumstances of the case and the interest of the estate demand it, it would be the plain duty of the administrator *de bonis non*, to take the proper legal course to avoid the effect of fraudulent sales of the assets made by the administrator to the injury of those interested in the estate.

Again, it was contended, in argument, that though the sale by the administrator be fraudulent, yet that it cannot be impeached by the administrator *de bonis non*, for the same reason which prevents an administrator from alleging that the conveyance of his intestate was fraudulent. But the distinction is obvious. An administrator represents his intestate, and stands in the same position which he occupied. But the administrator *de bonis non* does not represent the administrator, and is only bound by his acts so far as they are legal and valid.

It is also said, that the administrator *de bonis non*, at all events, is not entitled to have the sale set aside, and to subject the property to administration, without tendering to the purchasers the money paid by them. But there is no reason to sustain such a position under the circumstances stated in the bill. The allegations of the bill are, in effect, that these parties became purchasers in bad faith, and with notice of the invalidity of their title, and that they were aiding in the commission of a fraud upon the estate. They, therefore, purchased in their own wrong, and are entitled to no protection, when the administrator *de bonis non*, who is charged with the

administration of the property, shall attempt to subject it to his just claim against their fraudulent interference. According to the allegations of the bill, they have fraudulently obtained possession of the property which belonged to the estate; and, upon no principle of justice, can they, under such circumstances, require, that before the party entitled to it shall recover his just rights, he shall be compelled to pay them what they have knowingly seen fit to pay in order to deprive him of his property.

We, therefore, think that these grounds of demurrer are not well taken.

3. The next objection to the bill taken by the demurrer is, that a court of equity had no jurisdiction of the subject-matter of the suit, it being a matter of administration of which the Court of Probates had exclusive jurisdiction.

The primary object of the bill is to have the sale made by Forstall, and the subsequent sales to the other parties, set aside, in order to remove an incumbrance upon the property which prevented a sale of it by the appellant for its fair value, and that he might be put into possession, in order that he might expose it to a fair sale and to the best advantage for those interested in the estate. We have above seen that the legal title to the property was in the administrator *de bonis non*, for the purposes of the trust, if the sales were fraudulent. And the question is, whether he has a right to go into equity to have conveyances set aside which depreciate the market value of the property. According to the allegations of the bill, there is a clear necessity for such steps, and it is plain that the Court of Probates has no power to grant the relief. It is also plainly the duty of the administrator *de bonis non*, under the circumstances, to have the impediments to a fair sale removed, so that the sale might be made to the best advantage for the creditors; and there being no other court competent to grant the relief, it was proper for him to resort to a court of equity. Such a proceeding is no encroachment upon the jurisdiction of the Court of Probates, but is merely in aid of that jurisdiction, and in order that the decree of that court may have its full effect for the benefit of parties whose rights would be otherwise lost or impaired. It is strictly analogous in principle to a bill filed in equity for the purpose of removing obstructions, created by fraudulent conveyances

to the execution of a judgment at law, and the conveyances being annulled in equity, the judgment at law can be fully executed by a fair sale of the property. And the jurisdiction of equity, in similar cases, has been frequently recognized by this court with reference to the proceedings in the Probate Court. *Williams* v. *Stratton*, 10 S. & M. 418; *Searles* v. *Scott*, 14 Ib. 94; *Doe* v. *Fonte*, 27 Miss. 619.

This jurisdiction, in aid of the action of other courts, appears, indeed, to be one of the best established, as well as peculiar, powers of a court of equity, and there can be no doubt of the propriety of its exercise in a case like that made by this bill.

Upon the same principle, it is competent for the court of equity to decree the possession of the property to the appellant, and an account for the rents and profits, because these things were necessary to a complete administration of the property, and in aid of the jurisdiction of the Court of Probates. The relief was such as that court was not competent to grant, and it was proper for the Court of Chancery, having taken jurisdiction, to grant all the relief which the justice of the case required in aid of the jurisdiction of the Court of Probates, and which that court was incompetent to grant.

But the court of equity had no jurisdiction to decree a sale of the land, and to take charge of the fund and have it applied to the payment of the debts of the estate. That was a matter pertaining to the jurisdiction of the Court of Probates, not requiring the aid of a court of equity; and the exercise of such a power by a court of equity would have, therefore, been unnecessary, and an encroachment upon the appropriate jurisdiction of the Court of Probates.

It is no ground of demurrer that the complainant is not entitled to all the relief specifically prayed for in his bill. If he shows himself entitled to any part of the relief thus prayed, the bill will be maintained to that extent.

We are asked, in behalf of the appellant, upon a decree here overruling the demurrer, to make a final decree in favor of the appellant; but a contrary practice is well established here, to reverse the decree, and remand the cause for answer; and accordingly, the decree, sustaining the demurrer, will be reversed, upon the principles above stated, and the cause remanded, and the defendants required to answer the bill within sixty days.